UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID BROWN, SR.<br>4632 N. 13th Street<br>Philadelphia, PA 19140<br><br>          Plaintiff,<br>   v.<br><br>COILPLUS-PENNSYLVANIA, INC.<br>5135 Bleigh Avenue<br>Philadelphia, PA 19136<br><br>And<br><br>UNITED STEEL, PAPER & FORESTRY,<br>RUBBER, MANUFACTURING, ENERGY,<br>ALLIED INDUSTRIAL AND SERVICE<br>WORKERS INTERNATIONAL UNION,<br>AFL-CIO, CLC, LOCAL UNION #4889-08<br>10 Canal Street, Suite 310<br>Bristol, PA 19007<br><br>And<br><br>UNITED STEEL, PAPER & FORESTRY,<br>RUBBER, MANUFACTURING, ENERGY,<br>ALLIED INDUSTRIAL AND SERVICE<br>WORKERS INTERNATIONAL UNION,<br>AFL-CIO, CLC<br>60 Boulevard of the Allies<br>Five Gateway Center, Suite 807<br>Pittsburgh, PA 15222<br><br>And<br><br>JOHN DOES<br><br>          Defendants. | NO.:<br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL OF TWELVE (12)**<br>**JURORS DEMANDED** |

**COMPLAINT FOR BREACH OF LABOR UNION'S DUTY OF FAIR
REPRESENTATION, BREACH OF CONTRACT AND WRONGFUL TERMINATION**

NOW COMES the Plaintiff, David Brown, Sr. (hereinafter "Plaintiff"), by and through his attorneys at Hopkins & Schafkopf, LLC and Weisberg Law and in complaint against the Defendants CoilPlus-Pennsylvania, Inc., United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, Local Union #4889-08, United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC and John Does (collectively, hereinafter "Defendants"), states as follows:

### Nature of Action

1. This action arises out of a violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, pursuant to 29 U.S.C.A. §185; see also *Vaca v. Sipes*, 87 S.Ct. 903 (1967).

### Jurisdiction and Venue

2. Jurisdiction in this Honorable Court is based on a violation of federal law conferred by 28 U.S.C. § 1331.

3. Venue lies in the district in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principal place of business, and/or business here, and/or the property which is the subject of this action is situated within this district.

4. This action arises out of a violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce, pursuant to 29 U.S.C.A. §185, of which a copy of the Collective Bargaining Agreement entitled Collective Bargaining Agreement Between CoilPlus Pennsylvania and United Steel, Paper & Forestry, Rubber, Manufacturing, Energy Allied Industrial & Service Workers

International Union, AFL-CIO-CLC, Local Union #4889-08, effective: February 1, 2015, is attached and incorporated herein as **Exhibit A**.

### Parties

5. Plaintiff, David Brown, Sr., resides at the above captioned address.

6. Defendants, United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, Local Union #4889-08 and United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively the "Union"), are a Union who has a collective bargaining agreement with CoilPlus-Pennsylvania, Inc. ("CoilPlus") with their principal place of business located at the above captioned addresses.

7. Defendant, CoilPlus- Pennsylvania, Inc., is a foreign corporation, doing business in the state of Pennsylvania at the above captioned address.

8. At all times relevant, Plaintiff was a member in good standing of the Union.

### Facts

9. Plaintiff began working worked for CoilPlus starting on or about August 3, 2011 until his termination on March 4, 2016.

10. Plaintiff was a member of the Union beginning on or about August 3, 2011 and paid ongoing membership fees.

11. In the spring of 2013, Plaintiff became Assistant Operator at his plant. This required him to set up the next job for the next operator or to put coils on the machine.

12. In early December of 2015, Plaintiff was given a temporary job title as Head Setter. This job title required Plaintiff to set up cuts for individual companies, set-up slits, and "shimming" little rings.

13. A few days after starting the temporary position as Head Setter, Plaintiff informed his plant supervisor, Mike Onody, and head supervisor, Richard Gorman, that he was unable to work at this title efficiently. The "shimming" of the little rings was confusing to Plaintiff and he knew with certainty that he was going to make a few mistakes.

14. Mr. Onody informed Plaintiff it was just a temporary position and Plaintiff would be at his usual position in no time.

15. The temporary job title was supposed to be thirty (30) days per the Collective Bargaining Agreement. See page 26 of Exhibit A.

16. The reason Plaintiff was chosen to fill this temporary position was because he had previously worked and trained as Head Setter.

17. Plaintiff's position as an Assistant Operator paid more than the title of Head Setter. Because it was just a temporary position, Plaintiff's income was not affected.

18. As previously mentioned, during that thirty (30) days, Plaintiff informed Mr. Onody and Mr. Gorman he would not be able to perform to the best of his abilities as Head Setter.

19. The reason Plaintiff knew he would not be able to perform to the best of his abilities was because of stress induced reasons.

20. Close to the end of the thirty (30) days, Plaintiff was instructed by Mr. Onody that he had to remain in as temporary Head Setter for another six (6) to eight (8) weeks.

21. Plaintiff had to stay in the temporary position for a longer period of time because CoilPlus failed to train a new employee for the position.

22. It is the company's duty to train personnel for positions that are being temporarily filled.

23. Plaintiff informed Mr. Onody about four (4) to five (5) separate times after the thirty (30) days that he was unable to stay as a temporary Head Setter due to personal reasons he knew would take a toll at work.

24. Mr. Onody did not care to listen Plaintiff and insisted on the fact that the company was unable to train someone or have someone else fill the position temporarily.

25. Plaintiff knew there was another gentleman who was supposed to be trained as Head Setter, but instead was asked to perform another job at the plant. There were also many other employees at the plant who knew how to perform the tasks as Head Setter.

26. On January 29, 2016, Plaintiff made his first mistake as Head Setter.

27. Plaintiff was told he received a verbal warning. However, according to CoilPlus Pennsylvania Disciplinary Form, it was a "written warning." **Exhibit B.**

28. A few days later on February 3, 2016, Plaintiff made another mistake at work. He was told this was another verbal warning.

29. On the CoilPlus Pennsylvania Disciplinary Form, it does not indicate whether or not the warning was verbal or not. The form does state that if Plaintiff has any further occurrence within the next twelve (12) months, he will be terminated. **Exhibit C.**

30. On that same day, February 3, 2016, Plaintiff requested a "Leave of Absence" form from his second shift supervisor, Tom Yaneralla.

31. Plaintiff wanted to file a leave of absence because he knew his stress had not gotten any better. On the contrary, with what was happening at work, it made it worse. Plaintiff wanted to get himself out the situation since Mr. Onody was not helping.

32. Plaintiff was aware leave of absences are not paid. However, Plaintiff was going to receive permission from his doctor which would then allow him to have a paid leave of absence.
33. Plaintiff is a single parent so he did not want to run the risk of losing any income for his family.
34. On February 5, 2016, Plaintiff made his final mistake at work.
35. According to the CoilPlus Pennsylvania Disciplinary Form, Plaintiff was suspended five (5) days pending termination. **Exhibit D.**
36. Plaintiff was informed that someone from the Union would contact him after the February 5, 2016 incident.
37. About two (2) weeks later, a union representative from International Union of United Steel Workers contacted Plaintiff. They gave him two (2) options: forget the job and collect unemployment; or attend a hearing. They informed Plaintiff that he was unable to collect unemployment during arbitration. Plaintiff wanted to fight for his job.
38. The hearing was held on February 25, 2016.
39. Before the hearing began, Mr. Onody asked Brian Martin, head of the Union at the plant, if they should wait for Plaintiff's union representative. Mr. Martin, knowing he is not allowed to represent employees at the plant, said "no."
40. Plaintiff, Mr. Onody, and Mr. Martin were the only parties in the hearing.
41. The hearing began with Mr. Martin insisting Mr. Onody should have listened to Plaintiff in the first instance where he mentioned he was unfit to work in the temporary position.
42. Mr. Onody then accused Plaintiff of making mistakes on purpose.

43. The meeting then became an exchange of inappropriate language between Mr. Onody and Mr. Martin. The two gentlemen were attacking each other on how they both handle their business.

44. Mr. Martin made a remark that CoilPlus "does this kind of stuff to employees all the time." This is insinuating employees are mistreated regularly in these kinds of matters.

45. The hearing ended abruptly.

46. On March 4, 2016, Plaintiff was told he lost his hearing and was terminated.

47. After the hearing, Jim Yount, Vice President of the Union, instructed Plaintiff to collect unemployment. He told Plaintiff the Union will not defend him. **Exhibit E**.

48. Plaintiff then contacted a lawyer for United Steelworkers. They informed him that he was entitled to proper representation. The lawyer also told Plaintiff he was misguided and that he was allowed to collect unemployment during the arbitration process.

49. After that phone call, Plaintiff immediately contacted Mr. Gorman to receive a copy of the Collective Bargaining Agreement.

50. Plaintiff was also informed that someone from the Union was trying to get his cousin a job at the plant. The person from the Union knew Plaintiff was on "watch." There was speculation that Plaintiff's termination was planned.

51. During the February 25, 2016 meeting, Plaintiff was deprived of his union rights to receive fair and adequate union representation.

## COUNT I
## BREACH OF DUTY OF FAIR REPRESENTATION

52. The foregoing paragraphs are fully incorporated herein as though set forth at length.

53. At all times material, Plaintiff's employment with CoilPlus was subject to a collective bargaining agreement ("CBA").

54. Plaintiff was entitled to fair and actual representation.

55. Defendants breached the CBA by not providing fair and actual representation during any of the meetings held to defend Plaintiff on the accusations being made against him.

56. As a result of Defendant's breach of the CBA, Plaintiff sustained significant economic loss.

WHEREFORE, Plaintiff requests this Court:

    A. Find that the Union has violated applicable law, reinstate Plaintiff in his position with CoilPlus, award Plaintiff compensatory damages to compensate him for his damages, including but not limited to , back wages, front wages, employee benefits, and other emoluments of employment, with interest as permitted;

    B. Award attorneys' fees and costs arising out of this action; and

    C. Grant any other relief this court deems equitable and just.

## COUNT II
## BREACH OF CONTRACT AND WRONGFUL TERMINATION

57. The foregoing paragraphs are fully incorporated herein as though set forth at length.

58. CoilPlus breached their contract with the Union and Plaintiff by the following acts and omissions:

    a. Suspended and terminated the employment of Plaintiff without just cause;

    b. Suspended and terminated the employment based on false facts and missing relevant information;

    c. Failed to adequately investigate the facts and circumstances prior to suspending and terminating the employment of Plaintiff;

  d. Failed to allow Plaintiff to adequately address the false facts and allegations, which were the alleged basis for the suspension and termination of Plaintiff's employment;

  e. Failed to follow the grievance procedures provided in the Union CBA with CoilPlus; and

  f. Wrongfully suspended and terminated the employment of Plaintiff.

WHEREFORE, Plaintiff requests that this Court:

  A. Find that CoilPlus has violated applicable law and award to Plaintiff compensatory damages to compensate him for damages, including but not limited to, back wages, front wages, employment benefits, and other emoluments of employment;

  B. Award attorneys' fees and costs arising out of this action; and

  C. Grant any other relief this court deems equitable and just.


|  |  |
|---|---|
| By: _____<br>Gary Schafkopf, Esquire.<br>Attorney for Plaintiff<br>Dated: 9/1/16 | **WEISBERG LAW**<br><br>By: _____<br>Matthew B. Weisberg, Esquire<br>Attorney for Plaintiff<br>Dated: 9/1/16 |